**Opinion issued September 24, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00947-CR

———————————

**GERMAIN LAWON DAVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1330760**

---

**MEMORANDUM OPINION**

A jury convicted appellant Germain Lawon Davis of capital murder and

found that a deadly weapon was used in the commission of the offense. *See* TEX.

PENAL CODE § 19.03(a)(2). The trial court pronounced a sentence of life in prison

without the possibility of parole. In three issues, Appellant challenges the sufficiency of the evidence to support the jury's verdict. He argues that the evidence was generally insufficient, and he specifically argues that there was insufficient evidence to corroborate the testimony of an accomplice witness or to show that he was guilty as a party to the crime.

We affirm.

## Background

In October 2011, Appellant Germain Lawon Davis and his friend Javon Bryant-Metoyer were sharing the use of a black Chevrolet Avalanche. Just before 9:00 p.m. on October 23, they ran out of fuel close to the Houston Galleria. They abandoned the vehicle and they entered an apartment complex parking lot on foot through an open security gate. An apartment complex resident who worked as a tow truck driver was responding to an unrelated call for assistance when he noticed the abandoned Chevrolet Avalanche and saw the men walk toward the parking lot.

Because this appeal presents a challenge to the sufficiency of the evidence to corroborate an accomplice's testimony, it is necessary to distinctly set forth the evidence presented by different witnesses. Gloria Chavez lived in the apartment complex with her husband, Esvin Luis-Sapon. In the parking lot they encountered the two men, who followed them to their car. Gloria testified that although she initially got into the car, one of the men pulled her from it and held her at gunpoint

2

while the other man held Esvin at gunpoint. The armed men ordered Gloria and Esvin not to look at them and threatened to kill the couple if they attempted to flee. Esvin offered them money and his car keys. Gloria heard a struggle and a gunshot from her husband's side of the car. She ran to Esvin, who had been shot in the back. He was bleeding profusely and unable to speak. The man who had held Gloria at gunpoint took Esvin's cash, and the other man took his car keys. One of the men also took Gloria's purse, which held her mobile phone. Both men ran away. Gloria remained with her husband until the police arrived. Esvin was taken to a hospital and later pronounced dead.

Javon, who pleaded guilty to the murder of Esvin, testified that he was with Appellant in southwest Houston on the night of October 23. He said that Appellant was driving a black Chevrolet Avalanche, and when the vehicle ran out of gas, they decided to "plot a scheme, try to go rob somebody else." They approached Gloria and Esvin and held them at gunpoint. Javon said that he pulled Gloria from the vehicle before hearing Esvin resisting and struggling with Appellant. He testified that he walked to the driver's side and shot Esvin in the back at close range. He denied having any intent to kill Esvin, saying, "If I wanted to kill him, I would have shot him more than one time. I shot him one time." After the shooting, Javon fled on foot; he later took a bus to the Villa Americana apartments.

That night Appellant called a close friend, Phillip Smith, to ask for a ride home from the southwest side of Houston. Phillip picked up Appellant a few blocks from the apartment complex where Esvin was shot. Phillip testified that Appellant told him he had been with a girlfriend but wanted to leave because she was "tripping." Phillip drove Appellant to the Villa Americana apartments in southeast Houston.

The next day, a Crime Stoppers tip identified Appellant as a possible suspect in the shooting and informed law enforcement officers that he and physical evidence pertaining to the crime could be found at apartment 12 in the Villa Americana apartments. The specified apartment was leased to Appellant's cousin, Tera Turnipseed. Law enforcement officers began surveillance of the apartment.

The surveillance team observed people loading boxes into a car that was parked on the driveway and owned by Tera's sister, Rosie. Tera and Rosie drove the car away from the apartments, and then law enforcement officers stopped them. Both Tera and Rosie gave officers consent to search the vehicle. In the car, officers found a plastic container and a laundry basket containing men's clothing and toiletries, a mobile phone belonging to Gloria Chavez, a pair of Nike "Air Force 1" athletic shoes, an assortment of ammunition, a battery for the telephone, and a loaded 9-mm semiautomatic handgun. A police officer testified that a brown spot

on the left toe of the shoes appeared to be blood. Laboratory testing and DNA analysis later confirmed that the spot was Esvin's blood.

Appellant's friend, Cedric Mason, testified that the day before the shooting, Appellant tried on and purchased a pair of Nike "Air Force" athletic shoes.

When officers determined that Appellant was in apartment 12, they approached the apartment to take him into custody. Meanwhile Javon, who was also present, fled through a back window and was later apprehended.

Tera testified that the day after Esvin's murder, she helped bring some of Appellant's packed belongings from her apartment to Rosie's car, which she sometimes borrowed. She offered two explanations for putting Appellant's belongings in the car: first, she said she was helping him move; later, she testified that she wanted his belongings removed from her apartment because of concern about some statements Javon made after the shooting. Tera testified that she knew Javon, did not like him, and did not permit him to stay in her apartment. But she said it was possible that some of his possessions were commingled with Appellant's belongings because the men sometimes shared clothing and other items.

The court's charge instructed the jury on capital murder as charged in the indictment and on aggravated robbery. The court also instructed the jury on the law

5

of parties, conspiracy, and the accomplice-witness rule. The jury found Appellant guilty of capital murder, and he appealed.

## Analysis

Appellant contends that the evidence was insufficient to support the jury's verdict. The court instructed the jury that it could find Appellant guilty of capital murder in one of three ways: (1) as the primary actor, if he intentionally shot and killed Esvin while in the course of committing robbery; (2) as a party to the offense, if he aided or encouraged Javon to murder Esvin while in the course of committing robbery; and (3) as a co-conspirator, if while carrying out a conspiracy to commit robbery, Javon murdered Esvin. On appeal, Appellant argues that there is no evidence to show that he was the primary actor. He further argues that Javon's "accomplice-witness" testimony is the only evidence that placed him at the scene of the crime and that there was insufficient corroborating evidence that tended to connect him to the offense. Therefore he contends that the evidence was insufficient to support the conviction for capital murder as a party or a co-conspirator.

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);

6

*Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We must defer to the responsibility of the factfinder to fairly resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from the facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Williams*, 235 S.W.3d at 750. In so doing, we may not reevaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Williams*, 235 S.W.3d at 750. This standard applies equally to circumstantial and direct evidence. *Laster v. State*, 275 S.W.3d 512, 517–18 (Tex. Crim. App. 2009).

A person commits capital murder if he intentionally commits murder while in the course of committing or attempting to commit robbery. TEX. PENAL CODE § 19.03(a)(2). A person commits murder if he "intentionally or knowingly causes the death of an individual." *Id.* § 19.02(b)(1). A person commits robbery if "in the course of committing theft and with intent to obtain or maintain control of . . . property, he intentionally, knowingly, or recklessly causes bodily injury to another; or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02(a)(1)–(2). Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. *Id.* § 31.03(a).

It is not enough for a court reviewing the sufficiency of evidence to consider whether the defendant himself has been shown to have committed the elements of the offense. This is so because a person may be charged with an offense if it is

7

committed by his own conduct, by the conduct of another for whom he is criminally responsible, or both. *Id.* § 7.01(a), (b). The law of parties is codified by section 7.02 of the Penal Code, which provides, in relevant part, that:

> (a) A person is criminally responsible for an offense committed by the conduct of another if:
>
> . . . .
>
> > (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or
>
> . . . .
>
> (b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* A factfinder may determine that an individual is a party to an offense when the evidence shows that there was "an understanding and common design to commit the offense." *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). This evidence may be circumstantial and need not point directly to the guilt of the defendant. *Id.*

Under the conspiracy theory of the law of parties, "the intent to participate in a conspiracy to commit an underlying felony supplies the mens rea for another felony actually committed in furtherance of the unlawful purpose." *Turner v. State*,

414 S.W.3d 791, 797 (Tex. App.—Houston [1st Dist.] 2013), *aff'd as modified*, 443 S.W.3d 128 (Tex. Crim. App. 2014). A defendant charged with capital murder under the conspiracy theory of the law of parties thus may be convicted without any proof that he intended to commit murder. *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Turner*, 414 S.W.3d at 797; *Love v. State*, 199 S.W.3d 447, 452 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (defendant may be convicted of capital murder solely on conspiracy theory of culpability).

The trial court's charge authorized the jury to convict Appellant of capital murder either as a principal actor or as a party to the offense, and the trial court instructed the jury on the law governing the conspiracy theory of culpability. *See* TEX. PENAL CODE § 7.02(b). Under section 7.02(b), the jury was not required to find that Appellant himself caused or intended to cause Esvin's death. Rather it could convict Appellant if it found that (1) he conspired with Javon to rob Esvin and Gloria, (2) Javon committed the murder while carrying out the conspiracy to commit robbery, and (3) he should have anticipated Javon's actions could arise as a result of carrying out the conspiracy. *See id.*

Javon testified that when the Avalanche ran out of fuel, he and Appellant made a plan to commit robbery. From this evidence, a rational jury could find that they had "an understanding and common design" to commit robbery. *See Gross*, 380 S.W.3d at 186. Javon further testified that while in the course of robbing

9

Gloria and Esvin at gunpoint, Esvin began resisting and struggling with Appellant. Javon admitted that he then shot Esvin at close range for refusing to give up the money or car keys. Esvin later died from this gunshot wound. A rational jury thus could find that Javon intentionally killed Esvin while in the course of committing robbery, i.e., attempting to deprive him of money and car keys while threatening his life.

Testimony from Javon and Gloria established that both Javon and Appellant brandished guns while in the course of committing robbery. "Evidence that a defendant knew his co-conspirators might use guns in the course of the robbery can be sufficient to demonstrate that the defendant should have anticipated the possibility of murder occurring during the course of the robbery." *Love*, 199 S.W.3d at 453. Because the evidence showed that there was an agreement and plan to commit robbery and that both men were armed, a rational jury could find that Appellant should have anticipated Javon's actions could result from carrying out the conspiracy. Thus, taking Javon's testimony into account, we conclude that the evidence was legally sufficient to support the jury's verdict. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

However, Appellant contends that the evidence is legally insufficient because Javon was an accomplice witness and his testimony was not sufficiently corroborated. "A conviction cannot be had upon the testimony of an accomplice

unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. art. 38.14. Unlike legal sufficiency, the accomplice-witness rule is not derived from federal or state constitutional principles. *See Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). Therefore, the standard of review for sufficiency of corroborating evidence is "tendency to connect" rather than rational sufficiency. *See Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999).

In reviewing the sufficiency of the corroborating evidence, we exclude the accomplice-witness testimony from our consideration and determine whether there is any independent evidence that tends to connect the defendant with the commission of the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). The evidence must link the accused in some way to the commission of the offense and show that rational jurors could conclude that the evidence sufficiently tended to connect the accused to the offense. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009); *Malone*, 253 S.W.3d at 257. "[W]hen there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

Corroborating evidence may be direct or circumstantial, and it need not be sufficient by itself to establish guilt. *Id.*; *Cathey,* 992 S.W.2d at 462.

Appellant argues that Javon's testimony is the only evidence placing him at the scene of the crime and connecting him to the murder. The non-accomplice witness evidence includes testimony from Gloria and from the tow truck driver establishing the presence of two men at the apartment complex on the night of the shooting. Gloria was unable to identify Appellant because it was dark, but she testified that two men followed her and Esvin and robbed them at gunpoint. The tow truck driver also testified that he saw the Chevrolet Avalanche and two men entering the apartment complex parking lot on the night of the shooting. The non-accomplice witness evidence also placed Appellant in the vicinity of the shooting on the night of the murder. Phillip testified that Appellant called him that night seeking a ride home from a location that was merely blocks away from the scene of the shooting and far from the Villa Americana apartments.

Non-accomplice evidence pertaining to events before and after the shooting also tends to connect Appellant to the offense. Prior to the shooting, Appellant was seen driving the Avalanche, which Tera said he shared with Javon, and which was found abandoned at the apartment complex where Esvin was killed. The day before the shooting Appellant tried on and purchased Nike Air Force 1 athletic shoes, the same type of shoes later found in Rosie's car.

Law enforcement officers testified at trial that a Crime Stoppers tip identified Appellant as a possible suspect in this crime and informed them that he could be found in apartment 12 at the Villa Americana, along with evidence of the crime. Apartment 12 was leased to Tera, Appellant's cousin, who testified that she helped put his possessions in her sister's car the day after the shooting. When that car was searched, a firearm, Gloria's mobile phone, and the Nike Air Force 1 shoes with Esvin's blood were found among men's clothing and other belongings. Moreover, Appellant himself was apprehended in apartment 12 the day after the murder.

Appellant contends that neither the evidence that he shared the Avalanche with Javon nor the presence of Esvin's blood on the Nike shoes that he may have shared with Javon connects him to the offense. However, in reviewing the evidence to determine whether it tends to connect Appellant to the offense, we must consider the evidence in the light most favorable to the jury's verdict. *See Smith*, 332 S.W.3d at 442. Appellant's arguments rely on considering the evidence in a manner contrary to the jury's verdict. While there was testimony that Javon sometimes drove the Avalanche, there was also evidence that the men shared the vehicle. Appellant's argument suggests a theory that Javon acted alone or in concert with someone other than him. To the extent that the evidence gives rise to conflicting views, we must defer to the jury's resolution of the conflict in the

13

evidence. *See id.* Similarly, while there was testimony that the men sometimes shared clothing and shoes, there was no evidence that Javon ever wore the Nike shoes that Appellant tried on and purchased the day before the shooting. Appellant's argument relies on Tera's testimony that he and Javon sometimes shared clothing. This argument would require us to resolve conflicting views of the evidence—i.e., that the shoes belonged to Appellant or that he shared them with Javon. Again, we must defer to the jury's determination that the evidence as a whole tended to connect Appellant to the crime. *See id.*

Having eliminated the accomplice-witness testimony from our consideration and having examined the non-accomplice witness evidence, we conclude that there is some non-accomplice witness evidence that linked Appellant to the commission of the offense of capital murder. *See Simmons*, 282 S.W.3d at 508; *Malone*, 253 S.W.3d at 257. Accordingly, we further conclude that Javon's testimony was corroborated, and the jury properly considered his testimony in reaching its verdict.

## Conclusion

Having considered Appellant's arguments, we conclude that the non-accomplice witness evidence tended to show his connection to the offense, and the evidence, including Javon's testimony, was legally sufficient to support his conviction for capital murder under a conspiracy theory of culpability. Accordingly, we overrule all of Appellant's issues, and we affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).